# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EDWARD S. WOLVIN,

          Plaintiff,

v.                                         Case No. 18-CV-1285

ANDREW M. SAUL[1],
Commissioner of Social Security,

          Defendant.

# DECISION AND ORDER

## 1. Procedural History

Edward S. Wolvin alleges that he is disabled due to degenerative disc disease, depression, and anxiety. This is the third time his claim for benefits under the Social Security Act is before this court. On April 28, 2009, the Honorable Aaron E. Goodstein reversed the decision of the Commissioner and remanded the matter for further proceedings. *Wolvin v. Astrue*, No. 08-CV-476, 2009 U.S. Dist. LEXIS 36771 (E.D. Wis. Apr. 28, 2009). On remand, an ALJ issued a partially favorable decision, finding that Wolvin was disabled as of October 20, 2013, but not before. Wolvin again sought review

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted as the named defendant in this action.

in this court, and the parties jointly agreed to remand. *See Wolvin v. Berryhill*, 16-cv-1228-LA (E.D. Wis.).

On remand the question was whether Wolvin was disabled between July 27, 2005, and October 19, 2013. (Tr. 1275.) The ALJ concluded Wolvin was not disabled in this period but rather had the residual functional capacity (RFC) to perform sedentary work with the additional limitations of "only occasional decision making and changes in the work setting," "no climbing of ladders, ropes and scaffolds and no operation of foot controls," only "occasional stooping, crouching, kneeling, crawling and climbing of ramps and stairs," and "after sitting or standing for thirty minutes, [he] must be allowed to change position for a stretch break for a few minutes." (Tr. 1282.) Consequently, he was capable of working as a "weight checker," "document preparer," or "order clerk."

## 2. Standard of Review

The court's role in reviewing the ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*,

357 F.3d 697, 699 (7th Cir. 2004). If the ALJ committed a material error of law, however, the court cannot affirm the ALJ's decision regardless of whether it is supported by substantial evidence. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

3. **Analysis**

   3.1. **Severity of Symptoms / SSR 16-3p**

An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work related activities ...." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

The ALJ concluded that Wolvin's symptoms were not as severe as he alleged and offered two broad reasons for his conclusion. "First, the medical records fail to

substantiate fully the claimant's allegations of disabling symptoms and limitations." (Tr. 1285.) The ALJ then offered a lengthy discussion of the medical evidence that, in his view, did not support the alleged severity of Wolvin's symptoms. (Tr. 1285-88.) He summarized his conclusions as follows:

> Physical examinations … typically show the claimant to be in no distress with normal gait, strength, sensation, coordination and balance, normal bulk and tone, negative straight leg raise testing and intact ability to walk on heels and toes and do deep knee bends. Further, the claimant's allegations of significant to extreme pain levels conflict with clinical findings. Moreover, the claimant's mental health conditions required little treatment prior to his established onset date and did not manifest in persistent abnormalities on mental status examinations.

(Tr. 1285.) The second reason the ALJ gave for concluding that Wolvin's symptoms were not as severe as he alleged was that he "retained the capacity for a good range of activities despite his complaints of pain." (Tr. 1288.)

Wolvin argues that the ALJ did not address certain portions of the record (ECF No. 22 at 18) and that "[t]he ALJ's analysis is simply contrary to the substance of" certain records (ECF No. 22 at 16).

"However, an ALJ need only 'minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.'" *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (quoting *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)). "[T]he ALJ need not provide a written evaluation of every piece of evidence." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). Only if the evidence "would support strongly a claim of

4

disability" must the ALJ explain "why he does not credit [the] evidence" "or why he concludes that such evidence is outweighed by other evidence." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010). Wolvin has not shown that the evidence the ALJ failed to discuss "would support strongly a claim of disability." Therefore, the ALJ did not error in not discussing the evidence.

Nor is remand appropriate simply because evidence supports a contrary conclusion. The court's review is to determine whether the ALJ's conclusion was supported by substantial evidence. "As the Supreme Court explained in *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971), this standard requires more than 'a mere scintilla' of proof and instead 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Id.* at 401." *Walker v. Berryhill*, 900 F.3d 479, 482 (7th Cir. 2018). Two contrary conclusions may each be supported by substantial evidence. And, specifically with respect to an ALJ's finding regarding the severity of the claimant's symptoms, the court can upset that finding only if it is "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). A finding is not "patently wrong" if "the ALJ had 'many specific reasons supported by the evidence'" for his conclusion. *Id.* at 510-11 (quoting *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018)). The court finds that substantial evidence—as reflected in the ALJ's lengthy discussion of the medical evidence and his assessment of Wolvin's activities—supports the ALJ's conclusion.

5

The court also rejects Wolvin's contention that the ALJ misinterpreted what medical practitioners meant when they recorded Wolvin as being in "no acute distress" during visits. The court finds insufficient support for Wolvin's contention that the term means only that the "patient will probably not become unstable in the next 5 minutes." *See Wanserski v. Colvin*, No. 1:14-cv-1033-DKL-JMS, 2015 U.S. Dist. LEXIS 129970, at *18 n.6 (S.D. Ind. Sep. 28, 2015) (quoting Dave Chauvin, D.O., and Lisa Hohler, C.P.C., "Physician Documentation — No Acute Distress," Premier Physician Services website (http://www.premierdocs.com/about-us/news/2013-02-14-physician-documentation-no-acute-distress ) (viewed Sept. 22, 2015)). The court has no basis for concluding that a medical professional uses the term differently than a lay person—*i.e.*, at that moment, the patient did not exhibit outward signs of severe or intense pain. If a person is able to sit in a physician's office and not exhibit signs of pain, one inference is that he is not in pain. A person not exhibiting signs of pain when meeting with a physician would be inconsistent with a claim that he is in constant, extreme pain. Of course, another conclusion is that the person is exceptionally good at concealing his pain. It was not error for the ALJ to accept the former inference and to rely on it throughout his decision.

Finally, the court rejects Wolvin's suggestion that the ALJ erred by equating his activities of daily living to an ability to work fulltime. (ECF No. 22 at 21 (citing *Hughes v. Astrue*, 705 F.3d 276, 278-79 (7th Cir. 2013)).) In accordance with SSR 16-3p, the ALJ

appropriately considered Wolvin's activities and assessed whether they were consistent with Wolvin's reports of the severity of his symptoms.

However, under SSR 16-3p, in addition to her daily activities, the ALJ must consider the following evidence, if relevant, when assessing the severity of a claimant's pain:

- The location, duration, frequency, and intensity of pain or other symptoms;

- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

In assessing the severity of Wolvin's symptoms, the court finds that the ALJ did not adequately consider certain relevant evidence. Specifically, although Wolvin's medication and treatment histories strongly support Wolvin's claims of severe and debilitating pain, the ALJ did not include them in his discussion of the severity of Wolvin's symptoms.

The ALJ noted that Wolvin sought

7

> extensive treatment for his back condition that involved many specialists, including neurosurgeons, orthopedic surgeons, pain management providers, primary care providers, and physical rehabilitation specialists. Treatment for the claimant's condition included multiple courses of physical therapy, aqua therapy, TENS unit, ice/heat, exercises and stretches, chiropractic care, epidural steroid injections in October and November 2006, pain medication that included narcotic medications and muscle relaxers. Per the claimant, these interventions offered only limited, lasting relief.

(Tr. 1284 (citations omitted).) Thus, the Commissioner argues, "[t]he ALJ thoroughly accounted for Plaintiff's complaints of extreme pain and his extensive and changing use of medications, including narcotics." (ECF No. 27 at 15.)

However, the ALJ noted these facts only in his recitation of Wolvin's medical history. He did not connect that history to his analysis. In other words, although the ALJ's discussion of Wolvin's symptoms includes a lengthy and relatively thorough discussion of Wolvin's many treatment visits during the relevant period, the ALJ's assessment focused on the details of individual visits. What was also relevant and required discussion was the fact that Wolvin had so many treatment visits. As reflected in the portion of the ALJ's decision quoted above, Wolvin sought extensive and diverse treatment for his pain. The fact and extent of this treatment tends to corroborate Wolvin's claims of debilitating pain. Absent discussion of this evidence, the court is unable to say that the ALJ complied with his obligation to build an accurate and logical bridge between the evidence and his conclusions.

The ALJ also erred in failing to discuss Wolvin's long history of having been prescribed powerful narcotics. Physicians frequently adjusted these medications in an attempt to bring him relief, always without long-term success. Again, this prescription history tends to strongly support Wolvin's claims that he was experiencing debilitating pain, and it was error for the ALJ to neglect to discuss it in his assessment of Wolvin's symptoms.

### 3.2. Medical Opinion Evidence

#### 3.2.1. Dr. Courtney Hogendorn

Dr. Courtney Hogendorn was a pain management specialist who treated Wolvin throughout the relevant period. The ALJ explained that he discounted Hogendorn's opinions, in part, because they were inconsistent. (Tr. 1292.) The ALJ stated that in March and October 2009 Hogendorn found Wolvin was severely limited. (Tr. 1292.) However, between these two opinions, in May 2009, Hogendorn found Wolvin to be significantly less limited, but gave "no explanation for the inconsistencies between her opinions." (Tr. 1292.)

The problem with the ALJ's analysis is that, as the Commissioner acknowledges (ECF No. 27 at 19), there is no March 2009 opinion from Hogendorn. The ALJ identified the March 2009 opinion as Exhibit 29F, 140 pages of Hogendorn's treatment records. (Tr. 1515-1653.) The ALJ does not cite to any specific page within Exhibit 29F, although it does include a copy of the October 2009 opinion. (Tr. 1578-82.)

9

The error was material because, rather than expressing inconsistent opinions about Wolvin's condition, Hogendorn's assessments in May and October 2009 suggest a degenerative progression of his condition. *See Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018) ("Physicians may update their views without being inconsistent if their later opinions are based on a patient's changed condition."); *see also id.* ("Degenerative conditions often get worse over time ….")).

Although the ALJ offered other explanations for discounting Hogendorn's opinions, the court cannot be confident that he would reach the same conclusion as to how much weight to give Hogendorn's various opinions were it not for his mistaken belief that Hogendorn's opinions inexplicably vacillated over time. Hogendorn had a significant treating relationship with Wolvin, and her expertise as a pain specialist was especially material to the ultimate question of the severity and limitations that resulted from Wolvin's pain. *See* 20 C.F.R. § 416.927(c)(2), (5).

### 3.2.2. Dr. Julian Freeman

The ALJ also gave "little weight" to the opinion of Julian Freeman, a neurologist who reviewed Wolvin's medical records. (Tr. 1293.) He stated that Freeman "issued his opinion a year after the claimant's established onset date and, therefore, contemplates evidence not wholly relevant to the inquiry here." (Tr. 1293.) He also found that Freeman's "extreme opinion" was inconsistent with other evidence, including Wolvin's

relatively good function at examinations and the fact he did not appear in any acute distress. (Tr. 1293.)

According to Wolvin, the fact that Freeman's opinion was formed after the established onset date is not, by itself, a valid reason for discounting it. (ECF No. 22 at 26.) The court agrees. But the ALJ did not discount Freeman's opinion simply because it was formed after the established onset date; he discounted Freeman's opinion because he relied on evidence that post-dated Wolvin's onset date. Wolvin does not challenge this aspect of the ALJ's conclusion. Therefore, this is not a basis for remand.

Wolvin also argues that the ALJ erred in finding that Freeman's opinions were inconsistent with the medical evidence. (ECF No. 22 at 26.) "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Rockwell v. Saul*, No. 18-2138, 2019 U.S. App. LEXIS 23711, at *15 (7th Cir. Aug. 8, 2019) (quoting *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018)). Thus, an ALJ cannot ignore "expert opinions to arrive at his own, incorrect, interpretation of the medical evidence." *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016). Similarly, an ALJ errs if he receives supplemental medical evidence and attempts to interpret that evidence and relate it to the claimant's symptoms rather than soliciting the opinion of a medical expert. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) ("Fatally, the administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence.").

Freeman's opinions (Tr. 1185-88; 1200-03) were based largely on his review of MRIs. From this objective evidence Freeman offered his opinion regarding Wolvin's limitations. The ALJ concluded that the limitations Freeman found were inconsistent with clinical examinations. (Tr. 1293 (noting Wolvin's "normal gait, an ability to walk on heels and toes and do deep knee bends, good upper and lower extremity and grip strength, negative straight leg raise testing, normal bulk and tone, intact coordination and balance … and … clinical observations that the claimant was in no acute distress").) The ALJ was not impermissibly "playing doctor" when he reached that conclusion. Rather, he reasonably relied on the opinions and conclusions of medical experts (*see, e.g.*, Tr. 726) to resolve this evidentiary conflict.

Consequently, the court finds no error in the weight the ALJ gave Freeman's opinions.

### 3.2.3. Dr. W. Keith Kahle and Dr. Todd Trier

Wolvin also criticizes the ALJ for the weight he gave the opinions of Dr. W. Keith Kahle and Dr. Todd Trier. (ECF No. 22 at 26-27.) In letters to the Division of Vocational Rehabilitation, each opined that Wolvin would need a "nonphysically demanding job." (Tr. 234, 653.)

The ALJ complied with his obligation to "minimally articulate" his reasons for the weight he gave these medical sources. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). It is not the court's role to reweigh the evidence or substitute its judgment for that

of the ALJ. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). Aside from the fact that the ALJ incorrectly stated Trier's opinion was from December of 2005 (Tr. 1291) rather than January of 2007 (Tr. 234), which the court finds immaterial and Wolvin does not raise, the court finds no independent error in the ALJ's assessment of these treating sources.

**3.3. Mental Health Limitations**

The ALJ must "orient the [vocational expert] to the totality of a claimant's limitations. Among the limitations the [vocational expert] must consider are deficiencies of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The ALJ found that Wolvin had a moderate limitation "[w]ith regard to concentrating, persisting, or maintaining pace …." (Tr. 1281.) However, he did not include this limitation in the hypothetical he presented to the vocational expert. Although the ALJ might be able to present the limitation using words other than "concentration, persistence, and pace" depending on the nature of the claimant's limitation, *see Cihlar v. Berryhill*, 706 F. App'x 881, 883 (7th Cir. 2017) , he failed to do so here.

The ALJ's hypotheticals included, in relevant part, limitations to unskilled work with "no more than occasional decision-making" and "no more than occasional changes in work setting." (Tr. 1674.) These limitations were insufficient to account for deficiencies in concentration, persistence, and pace. *See, e.g.*, Varga v. Colvin, 794 F.3d

13

809, 814 (7th Cir. 2015) ("[W]e have repeatedly rejected the notion that a hypothetical like the one here 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'") (quoting Yurt v. Colvin, 758 F.3d 850, 859 (7th Cir. 2014); citing Stewart v. Astrue, 561 F.3d 679, 685 (7th Cir. 2009); Craft v. Astrue, 539 F.3d 668, 677-78 (7th Cir. 2008); Young v. Barnhart, 362 F.3d 995, 1004 (7th Cir. 2004)).

The closest the vocational expert came to offering an opinion regarding limitations in concentration, persistence, and pace was when Wolvin's attorney asked how a moderate limitation in maintaining focus would affect his employability. (Tr. 1677-78.) Wolvin's attorney defined "moderately limited" as meaning that "[s]omewhere along the lines of one third to two thirds of the workday the individual is unable to sustain focus due to the pain and pain medications that he's under." (Tr. 1678.) The vocational expert opined that such a limitation would preclude all work. (Tr. 1678-79.)

Thus, the court must find that the ALJ erred in failing to include a moderate limitation in concentration, persistence, and pace in the hypothetical he presented to the vocational expert. Therefore, there is no expert evidence in the record to support the conclusion that Wolvin is capable of sustained employment given his moderate limitation in those domains. Consequently, remand is required.

14

## 4. Conclusion

Wolvin's arguments often amount to little more than disagreements with the weight the ALJ gave particular evidence. However, it is not the court's role to reweigh the evidence. Having said that, the ALJ erred in failing to include Wolvin's extensive and varied treatment and medication history in his assessment of Wolvin's symptoms. The ALJ also erred in his assessment of Dr. Hogendorn's opinions. There was no March 2009 opinion, and this error undermined the ALJ's assessment of Dr. Hogendorn. The ALJ also erred by not including Wolvin's moderate limitation in concentration, persistence, and pace in the hypotheticals he presented to the vocational expert. These issues must be addressed on remand.

The court declines to directly award benefits. The court appreciates that this has been an exceptionally long process for Wolvin. And it is undoubtedly frustrating for him to suffer the repeated errors in the assessment of his claim. However, although there is evidence strongly supporting Wolvin's claim, the record is not so one-sided that a direct award of benefits is appropriate. *See Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016).

Finally, although it is not a point raised by the parties and was likely waived by counsel's failure to object at the hearing before the ALJ, the court notes that two of the jobs the vocational expert identified that Wolvin allegedly could do—"weight checker" and "document preparer"—are antiquated, and it is doubtful that they exist in

significant numbers in the national economy. *See Gulley v. Berryhill*, No. 17-CV-1782, 2019 U.S. Dist. LEXIS 25986, at *10 (E.D. Wis. Feb. 19, 2019); *see also Ragsdale v. Saul*, No. 18-CV-946, 2019 U.S. Dist. LEXIS 113130, at *18-19 (E.D. Wis. July 8, 2019). Moreover, if a job such as a "weight checker" actually existed, it seems unlikely that an employer would hire a heavy user of narcotics for the sensitive and dangerous position of checking the weight of gunpowder in ordnance. (*See* DOT 737.687-026; Tr. 1679 (VE testimony that it would "depend on the employer" whether it would be willing to employ a heavy narcotics user).) These are additional issues that must be addressed on remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 3rd day of October, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge